# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **VICKI HALE, EARLE FISHER, TELISE TURNER, HEDY WEINBERG, STEVEN COHEN, CHARLES 'CHAZ' MCIVER MOLDER, CHANEY MOSLEY, JUSTIN PEARSON, and the TENNESSEE DEMOCRATIC PARTY,** ) ) ) ) ) ) ) | |
| *Plaintiffs*, ) | CASE NO. _____ |
| ) | |
| v. ) | JUDGE _____ |
| ) | |
| **BILL LEE, Governor, TRE HARGETT, Secretary of State; MARK GOINS, Tennessee Coordinator of Elections; all in their official capacity only,** ) ) ) ) ) ) | |
| *Defendant.* ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF

1.   Plaintiffs Vicki Hale, Earle Fisher, Telise Turner, and Hedy Weinberg (collectively, "Voter Plaintiffs"), are active, registered voters who reside in Shelby, Maury, and Davidson Counties in Tennessee.

2.   Plaintiffs Steven Cohen, Chaz Molder, Chaney Mosley, and Justin Pearson (collectively, "Candidate Plaintiffs") are qualified candidates who have been running for months for the United States House of Representatives in Tennessee Congressional Districts 5, 6, and 9, meaning those Congressional Districts as they were set by the General Assembly in 2022.[1]

3.   Plaintiff Tennessee Democratic Party is a political party with members who are registered to vote in Tennessee and who live across Tennessee and overseas.

---

[1]   Plaintiffs Cohen, Molder, Mosley, and Pearson are also active, registered voters who reside in Shelby, Maury, and Davidson Counties in Tennessee.

4. Through this action, Voter Plaintiffs, Candidate Plaintiffs, and the Tennessee Democratic Party (collectively, "Plaintiffs") ask the Court to enjoin the implementation and enforcement of House Bills 7001, 7002, 7003 and 7005, as enacted by the State of Tennessee on May 7, 2026.

5. On May 7, 2026, Governor Bill Lee signed House Bills 7001, 7002, 7003, and 7005 (referred to collectively herein as the "Act"). The Act, which takes immediate effect, redraws most of the Congressional Districts in Tennessee, including Congressional Districts 5, 6, and 9. The Act also revises election deadlines, candidate qualifications, and voter notice requirements

6. To effectuate these revisions for the August 2026 primary elections, the Act moves the 2026 candidate qualifying deadline from March 10 to May 15; moves the withdrawal deadline for existing candidates from March 17 to May 15; removes the ability to withdraw for all candidates who newly qualify in the "special qualifying period"; and removes those candidate's ability to appeal their removal from the ballot by political parties.

7. Four election officers, including the Assistant Coordinator of Elections for the State of Tennessee and the Administrator of Elections for Shelby County, Tennessee, swore under oath in 2022 that creating new legislative districts this late in the election calendar will prevent county election offices from mailing overseas absentee ballots to deployed servicemen and other overseas citizens by the deadline set by the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), as amended by the Military and Overseas Voter Empowerment Act, 52 U.S.C. §§ 20301.[2] In the sworn words of the Administrator of Elections for Shelby County, Tennessee,

---

[2] Plaintiffs attach Affidavits as exhibits to this Complaint from the Beth Henry Robertson, the Assistant Coordinator of Elections for the State of Tennessee (Exhibit A); from Linda Phillips, the Administrator of Elections for Shelby County, Tennessee (Exhibit B); from Chris Davis, the Administrator of Elections for Knox County, Tennessee (Exhibit C); and from Tammy Smith, the Administrator of Elections for Wilson County, Tennessee (Exhibit D).

moving the candidate "qualifying deadline to May 20, 2022, would result in our Office failing to meet the UOCAVA mailing, potentially disenfranchising overseas and military voters." (Exhibit B, Affidavit of Linda Phillips, at ¶ 27.)

8.      These four election officers also attest that redrawing legislative districts this late in the election calendar would make it "very difficult for us to have everything timely and accurately ready for the August election and early voting" (Exhibit A, Affidavit of the Assistant Coordinator of Elections for the State of Tennessee, Beth Henry Robertson, at ¶ 21.), and would "jeopardize our Office's ability to complete its obligations timely and accurately, and would likely result in significant voter confusion" (Exhibit B, Affidavit of Linda Phillips, at ¶ 27, with nearly identical language stated by the Administrators of Elections for Knox County and Wilson County in their Affidavits, at Paragraph 26 of Exhibit C and at Paragraph 23 of Exhibit D.)

9.      Relying on these four affidavits, the State of Tennessee, through its legal counsel in *Wygant v. Lee*, Davidson County Chancery Court Case Number 22-0287-IV, stated that "changing the rules on the eve of an election would wreak chaos upon the electoral process and would unnecessarily risk voter confusion and disenfranchisement of Tennessee's military and overseas voters, causing irreparable harm to the Defendants [(*i.e.*, the State of Tennessee given that the Defendants were sued in their official capacities only)] and to the public interest."[3] The State of Tennessee, through its legal counsel, made these statements on March 25, 2022, more than six weeks earlier in the election calendar than the May 7 enactment of the Act.

10.     On April 13, 2022, over three weeks earlier than the May 7 enactment of the Act, the Tennessee Supreme Court credited the four election officers' affidavits as its justification for

---

[3]      Plaintiffs attach as Exhibit E to this Complaint the Response in Opposition to Plaintiffs' Motion for Temporary Injunction filed on March 25, 2022, by Governor Bill Lee, by Secretary of State Tre Hargett, and by Tennessee Coordinator of Elections, Mark Goins, in *Wygant v. Lee*.

staying the trial court's injunction, which had required the Generally Assembly to draw new State Senate districts in Middle Tennessee by April 21, 2022. Concerning the trial court's related extension of the candidate qualifying deadline from April 7, 2022, to May 5, 2022, the Tennessee Supreme Court stated, "An extension of that statutory deadline—to which other deadlines are tied—of nearly a month to May 5, 2022, imposes a significant delay on the election process in this state, as reflected by the submitted affidavits. In addition, as detailed above, the affidavits also describe the uncertainty and confusion that will result from a change in the Senate plan at this stage in the election process, regardless of when the new candidate filing deadline is set."[4]

11.    All four of these election officers remain in the same election officer positions they held in 2022 when they swore that redrawing legislative districts in May would prevent their offices from mailing ballots to servicemembers overseas in compliance with federal law, would jeopardize their offices' ability to complete their obligations timely and accurately, and would lead to voter confusion and disenfranchisement.

12.    The United States Constitution guarantees the right to vote to most citizens of the State of Tennessee over the age of 18, including all Voter Plaintiffs in this Action. The United States Constitution further guarantees the Voter Plaintiffs and the Candidate Plaintiffs the right to engage in political speech and to form political associations. Based on the sworn statements of the very election officers who will administer the August 6, 2026, primary statewide and in Shelby County, as well as declarations to be submitted by Plaintiffs, the Act will unlawfully burden the Plaintiffs' constitutional rights to vote and to free speech and association. To protect their constitutional rights to vote and associate, Plaintiffs ask this Court to enjoin the implementation

---

[4]    Plaintiffs attach as <u>Exhibit F</u> to this Complaint the April 13, 2022, Opinion of the Tennessee Supreme Court in *Wygant v. Lee*.

4

and enforcement of the Act for the 2026 federal election cycle.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiffs' constitutional claims because they raise a federal question pursuant to 28 U.S.C. § 1331. Specifically, their claims arise under the Constitution of the United States and are brought pursuant to 42 U.S.C. § 1983.

14. Venue for this action properly lies in the U.S. District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and because the claims arose in this judicial district.

15. Plaintiffs do not herein challenge the apportionment decisions codified in the Act. Rather, Plaintiffs seek an injunction barring the implementation and enforcement of the Act for the 2026 election cycle. For this reason, Plaintiffs submit that 28 U.S.C. § 2284, which requires empaneling a three-judge panel to hear actions "challenging the constitutionality of the apportionment of congressional district," does not apply. If the Court determines 28 U.S.C. § 2284 applies, however, then Plaintiffs request that a three-judge panel be empaneled.

## PARTIES

16. Plaintiff Vicki Hale is a resident of Maury County in the State of Tennessee. Plaintiff Hale is registered to vote in Maury County, Tennessee. Plaintiff Hale intends to vote in the August 6, 2026, primary election for federal Congressional Representative. Ms. Hale contributed financially to Mr. Molder's campaign, attended events to support his campaign, and talked to voters who lived in her congressional district before the Act on his behalf.

17. Plaintiff Earle Fisher is a resident of Shelby County in the State of Tennessee. Plaintiff Fisher is registered to vote in Shelby County, Tennessee. Plaintiff Fisher intends to vote in the August 6, 2026, primary election for federal Congressional Representative. Mr. Fisher has

5

hosted or attended community events and fundraisers to discuss political issues relevant to his pre-Act congressional district and support candidates running in former District 9.

18. Plaintiff Telise Turner is a resident of Shelby County in the State of Tennessee. Plaintiff Turner is registered to vote in Shelby County, Tennessee. Plaintiff Turner intends to vote in the August 6, 2026, primary election for federal Congressional Representative. Ms. Turner has hosted or attended community events and fundraisers to discuss political issues relevant to her pre-Act congressional district and support candidates running in former Congressional District 9.

19. Plaintiff Hedy Weinberg is a resident of Davidson County in the State of Tennessee. Plaintiff Weinberg is registered to vote in Davidson County, Tennessee. Plaintiff Weinberg intends to vote in the August 6, 2026, primary election for federal Congressional Representative. Ms. Weinberg has hosted or attended community events and fundraisers to discuss political issues relevant to her pre-Act congressional district and support candidates running in former District 5.

20. Plaintiff Steven Cohen is the United States Representative for Tennessee's Ninth Congressional District. Plaintiff Cohen is also a duly announced and qualified candidate for the United States House of Representatives for the Ninth Congressional District as enacted by the Tennessee General Assembly following the 2020 Census and as in effect throughout the 2024 election cycle (the "2024 Map"). Plaintiff Cohen has engaged in campaigning activities in the Ninth Congressional District under the 2024 Map since well before the March 10, 2026, candidate qualification deadline and in so doing has targeted his political speech and association to reach voters within the Ninth Congressional District under the 2024 Map. In campaigning throughout the Ninth Congressional District under the 2024 Map, Plaintiff Cohen has communicated with, and associated with, voters in the Ninth Congressional District under the 2024 Map and has expended campaign resources within the Ninth Congressional District under the 2024 Map to

6

amplify his political speech within the district's boundaries. Because of the Act, Plaintiff Cohen will have to expend more resources identifying, associating with, and campaigning to voters who live in the newly-enacted district. Plaintiff Cohen is a resident of Shelby County in the State of Tennessee. Plaintiff Cohen is registered to vote in Shelby County, Tennessee, and Plaintiff Cohen intends to vote in the August 6, 2026, primary election for federal Congressional Representative.

21. Plaintiff Charles "Chaz" McIvor Molder is a duly announced and qualified candidate for the United States House of Representatives for the Fifth Congressional District as enacted by the Tennessee General Assembly following the 2020 Census and as in effect throughout the 2024 election cycle (the "2024 Map"). Plaintiff Molder has engaged in campaigning activities in the Fifth Congressional District under the 2024 Map since well before the March 10, 2026, candidate qualification deadline and in so doing has targeted his political speech and association to reach voters within the Fifth Congressional District under the 2024 Map. In campaigning throughout the Fifth Congressional District under the 2024 Map, Plaintiff Molder has communicated with, and associated with, voters in the Fifth Congressional District under the 2024 Map and has expended campaign resources within the Fifth Congressional District under the 2024 Map to amplify his political speech within the district's boundaries. Because of the Act, Plaintiff Molder will have to expend more resources identifying, associating with, and campaigning to voters who live in the newly-enacted district. Plaintiff Molder is a resident of Maury County in the State of Tennessee. Plaintiff Molder is registered to vote in Maury County, Tennessee, and Plaintiff Molder intends to vote in the August 6, 2026, primary election for federal Congressional Representative.

22. Plaintiff Chaney Mosley is a duly announced and qualified candidate for the United States House of Representatives for the Sixth Congressional District as enacted by the Tennessee

7

General Assembly following the 2020 Census and as in effect throughout the 2024 election cycle (the "2024 Map"). Plaintiff Mosley has engaged in campaigning activities in the Sixth Congressional District under the 2024 Map since well before the March 10, 2026, candidate qualification deadline and in so doing has targeted his political speech and association to reach voters within the Sixth Congressional District under the 2024 Map. In campaigning throughout the Sixth Congressional District under the 2024 Map, Plaintiff Mosley has communicated with, and associated with, voters in the Sixth Congressional District under the 2024 Map and has expended campaign resources within the Sixth Congressional District under the 2024 Map to amplify his political speech within the district's boundaries. Because of the Act, Plaintiff Mosley will have to expend more resources identifying, associating with, and campaigning to voters who live in the newly-enacted district. Plaintiff Mosley is a resident of Davidson County in the State of Tennessee. Plaintiff Mosley is registered to vote in Davidson County, Tennessee, and Plaintiff Mosley intends to vote in the August 6, 2026, primary election for federal Congressional Representative.

23. Plaintiff Justin Pearson is the elected representative for Tennessee House of Representatives District 86, which covers portions of Shelby County. Plaintiff Pearson is also a duly announced and qualified candidate for the United States House of Representatives for the Ninth Congressional District as enacted by the Tennessee General Assembly following the 2020 Census and as in effect throughout the 2024 election cycle (the "2024 Map"). Plaintiff Pearson has engaged in campaigning activities in the Ninth Congressional District under the 2024 Map since well before the March 10, 2026, candidate qualification deadline and in so doing has targeted his political speech and association to reach voters within the Ninth Congressional District under the 2024 Map. In campaigning throughout the Ninth Congressional District under the 2024 Map, Plaintiff Pearson has communicated with, and associated with, voters in the Ninth Congressional

8

District under the 2024 Map and has expended campaign resources within the Ninth Congressional District under the 2024 Map to amplify his political speech within the district's boundaries. Because of the Act, Plaintiff Pearson will have to expend more resources identifying, associating with, and campaigning to voters who live in the newly-enacted district. Plaintiff Pearson is a resident of Shelby County in the State of Tennessee. Plaintiff Pearson is registered to vote in Shelby County, Tennessee, and Plaintiff Pearson intends to vote in the August 6, 2026, primary election for federal Congressional Representative.

24. Plaintiff, the Tennessee Democratic Party, is a political party with membership including individuals registered to vote in Tennessee who reside across the State of Tennessee and overseas.

25. Defendants in this action are:

    a. Bill Lee, Tennessee Governor, who holds office pursuant to Article III of the Tennessee Constitution, having been duly elected by the citizens of the State of Tennessee.

    b. Tre Hargett, Tennessee Secretary of State, who holds office pursuant to Article III, Section 17 of the Tennessee Constitution. Mr. Hargett, as Secretary of State, appointed Mr. Goins as Tennessee Coordinator of Elections, and has unfettered authority to terminate Mr. Goins from that position.

    c. Mark Goins, Tennessee Coordinator of Elections, who is appointed by the Secretary of State pursuant to T.C.A. § 2-11-201. Mr. Goins is charged with obtaining and maintaining "uniformity in the application, operation and interpretation of the election code," and acts under the authority of the Tennessee Secretary of State. *Id.*

26. Defendants are sued in their official capacity only, and not individually.

9

**FACTS**

**A.     The Enactment of HB7001, HB7002, HB7003, and HB7005**

27.     On May 1, 2026, Governor Bill Lee issued a proclamation calling the One Hundred Fourteenth General Assembly of the State of Tennessee to meet and convene in extraordinary session beginning May 5, 2026, to "consider an act upon legislation relative to: (1) the composition of Tennessee's congressional districts; (2) making statutory changes that are necessary to effectuate change to the composition of Tennessee's congressional districts and to facilitate 2026 congressional elections; (3) making appropriations sufficient o provide funding for any legislation that received final passage during the extraordinary session or other appropriations sufficient to facilitate 2026 congressional elections; and (4) making appropriations sufficient to pay the expenses of the extraordinary session, including the expenses of carrying out any actions taken pursuant to this proclamation."[5]

28.     On May 4, 2026, Defendant Mark Goins issued a Memorandum to all county election commissions in Tennessee.[6] This memorandum outlines the manifold preparations county election officials would need to make once congressional districts were redrawn.

29.     During the extraordinary legislative session called by the Governor's proclamation, the Tennessee General Assembly reapportioned most of Tennessee's nine Congressional districts by enacting House Bills 7001, 7002, 7003, and 7005 (collectively, the Act).[7]

30.     The Tennessee Senate passed the Act on May 7, 2026

---

[5]     Plaintiffs attach as <u>Exhibit L</u> to this Complaint the May 1, 2026, gubernatorial proclamation.
[6]     Plaintiffs attach as <u>Exhibit M</u> to this Complaint the Defendant Goins' 2026 Memorandum.
[7]     Plaintiffs attach as <u>Exhibit K</u> to this Complaint the Act.

10

31.     The Tennessee House of Representatives passed the Act on May 7, 2026.

32.     Governor Lee signed the four House Bills that comprise the Act on May 7, 2026.

33.     By its express terms, the Act went into effect immediately upon its enactment.

**B.      The Act's Revisions to the 2026 Election Cycle**

34.     The Act redraws most of Tennessee's nine congressional districts.

35.     The Act splits formerly compact District 9, which included most of Shelby County, into three Districts: 5, 8, and 9.

36.     The Act substantially redraws District 5.

37.     Prior to enactment of the Act, the candidate qualifying deadline for the August 2026 congressional primary elections was March 10, 2026. The Act delays this date to May 15, 2026.

38.     The Act creates a new "special qualifying period" that allows for anyone to submit a nominating petition that contains twenty-five (25) "signatures from registered voters residing anywhere within any county that lies wholly or partially within the congressional district."

39.     Nominating petitions in the special qualifying period must be submitted by May 15, 2026.

40.     Prior to enactment of the Act, the deadline for qualified candidates for the August 2026 congressional primary elections to withdraw their names from the ballot and for political parties to remove candidates from the August 2026 congressional primary ballot was March 17, 2026. The Act removes these options for candidates for qualifying in the "special qualifying period" by May 15, 2026.

41.     Prior to enactment of the Act, the deadline for candidates who had been removed from the August 2026 congressional primary ballot by a political party to appeal this decision was March 24, 2026. The Act removes this appeal for candidates qualifying in the "special qualifying

11

period" by May 15, 2026.

42. Prior to the enactment of the Act, candidates had to meet the residency requirements for state senators and representatives in the Tennessee Constitution. Tenn. Code Ann. §2-13-209. The Act removes this requirement for the 2026 primary election.

43. Under the Act, candidates who qualified before the Act can either (a) stay in the district in which they qualified, which requires no notice; (b) provide written, notarized notice to the coordinator of elections that they are running in a different district by May 15, 2026; or (c) or provide written, notarized notice to the coordinator of elections that they are withdrawing by May 15, 2026.

44. Under the Act, "each county election commission in which all or any portion of a redrawn congressional district is located shall public notice on the county election commission's official website, if one exists." Publishing on the county election commission website, if one exists, "satisfies all notice requirements" under Title 2, "including requirements to publish notice of changes to districts, offices to be elected, or qualifying deadlines arising from the redrawn congressional districts."

45. The Act repeals Tennessee's statutory ban on mid-decade reapportionment—a law passed in 1972. *See* Tenn. Code. Ann. §2-6-102.

46. The Act appropriates $3,154,700 to the Secretary of State for the sole purpose of reimbursing counties for expenses incurred by county election commissions for the 2026 congressional elections.

**C. In 2022, Governor Lee, Secretary of State Hargett, and Coordinator of Elections Goins argued that changing the election calendar in March before the August election would wreak chaos upon the electoral process, risking voter confusion and disenfranchisement.**

47. On February 23, 2022, three voters filed a lawsuit challenging recently enacted

12

legislative districts for the Tennessee House of Representative and the Tennessee Senate. This was titled *Wygant v. Lee*, Davidson County Chancery Court, Case No. 22-0287-IV.[8]

48. In *Wygant*, the plaintiffs sought an injunction requiring the General Assembly to redraw districts in the state House and Senate to comply with the Tennessee Constitution.

49. To allow for this change, the plaintiffs asked the court to delay the candidate qualifying deadline from April 7, 2022, to May 20, 2022.[9]

50. Governor Lee, Secretary of State Hargett, and Election Coordinator Goins, through their counsel the Attorney General and Reporter for the State of Tennessee, opposed the plaintiffs' request for an injunction **on March 25, 2022**, noting at that time (more than five weeks earlier in the election calendar than the enactment of the Act on May 7 of this year), that "changing the rules on the eve of an election would wreak chaos upon the electoral process and would unnecessarily risk voter confusion and disenfranchisement of Tennessee's military and overseas voters, causing irreparable harm to the Defendants and to the public interest."[10]

51. Governor Lee, Secretary of State Hargett, and Election Coordinator Goins elaborated on irreparable harm they (in their official capacities, and thus on behalf of the State of Tennessee) would suffer if the April 7, 2022, candidate qualifying deadline were moved into May as follows. Again, the Governor, Secretary of State, and Election Coordinator filed the following statements on March 25, 2022:

Here, the election process for members of the house of Representatives and Senate is well

---

[8] Plaintiffs attach as <u>Exhibit H</u> to this Complaint the February 23, 2022, Complaint in *Wygant v. Lee*, which was titled *Moore v. Lee* when filed, Davidson County Chancery Court, Case Number 22-0287-IV. The Court may take judicial notice of court records available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 647 n.5 (6th Cir. 2004).

[9] Plaintiffs attach as <u>Exhibit I</u> to this Complaint the March 11, 2022, Memorandum in Support of Motion for Temporary Injunction.

[10] Plaintiffs attach as <u>Exhibit E</u> to this Complaint the March 25, 2022, Response in Opposition filed by Governor Lee, Secretary of State Hargett, and Coordinator of Elections Goins.

13

underway. Qualifying petitions for candidates for the general Assembly began to be issued on February 7. The qualifying deadline for candidates is April 7, the withdrawal deadline is April 14, In order to qualify for candidacy, the candidate must present a petition to the county election commission containing the signatures of twenty-five registered voters in the district. Candidates cannot obtain those signatures unless they know where the district boundaries are. Plaintiffs are asking the court to change the rules in the middle of the game.

* * *

. . . contrary to Plaintiffs' assertion, the election process begins long before the June 20 deadline for mailing out military ballots. And the April 7 candidate qualifying deadline is tied directly to that deadline. Although candidates are required to qualify by noon on April 7th, county election commissions cannot begin to prepare the August ballot until April 21. That is because qualified candidates have seven days to withdraw from the ballot. Tenn. Code Ann. § 2-5-204(b)(1). During the same time period, the state executive committee for each political party may disqualify primary candidates as not being bona fide members of the party pursuant to Tenn. Code Ann. § 2-13-104. The deadline for the withdrawal and the disqualification of primary candidates is 12:00 noon on April 14. However, the appeal by the disqualified candidate and review process of the state executive committee are not finalized until seven days after the withdrawal deadline—April 21. Tenn. Code Ann. § 2-5-204(b)(2). Taking into account these statutorily mandated deadlines, there are approximately forty-one (41) business days between the time county election commissions can begin to prepare their ballots and the deadline on which ballots for military personnel and overseas citizens must be mailed out. See Ex. 5-Affidavit of Beth Henry-Robertson.

If, however, the qualifying deadline moves to May 20, then the withdrawal deadline moves to May 27 and the political party disqualification process deadline falls on June 3. This delayed schedule would give county election commissions only ten (10) business days to prepare, review and send ballots to military personnel and overseas citizens. That simply is not enough time. Indeed, as the Deputy State Election Coordinator and the Election Administrators for Shelby, Wilson and Knox Counties have testified, they need the time between the April 7 qualifying deadline and the deadline mandated by the MOVE Act to accurately prepare and timely mail out the ballots to military voters and, that if the April 7 qualifying deadline were moved, they would not be able to mail military ballots out as required by federal law. See Ex. 5-Affidavit of Beth Henry-Robertson; see also Ex. 6-Affidavit of Linda Phillips; Ex. 7-Affidavit of Tammy Smith; and Ex. 8-Affidavit of Chris Davis.

They have further testified that moving the April 7 qualifying deadline will make it difficult for them to timely and accurately prepare for the August Election as their work preparing for that election becomes unnecessarily hasty, risking the accuracy of the election. For example, the voting machines used in the August election must be programmed for early voting and for election day. The voting machines used for early voting must be programmed with all the ballot styles in a particular county, while the machines used on election day must be programmed with the ballot styles for each individual precinct in which they will be used. Once the voting machines have been programmed, pursuant to

14

Tenn. Code Ann. § 29-105(b), notice must be given to the chairs of the county executive committees of the political parties and to independent candidates stating where and when the machines will be tested, and then public testing of the voting machines must be conducted. Once again though, the county election commissions cannot begin to program their voting machines until after the withdrawal and party certification deadlines, the Election Commission candidate certification vote, and the ballots are built and approved. Thus, if the qualifying deadline is moved to May 20—the counties will not have enough time to adequately program and test their voting machines prior to the start of early voting (July 15, 2022). See Exs. 6-8.

* * *

In this case, the evidence clearly demonstrates that moving the qualifying deadline risks the accuracy of the primary election because of the required timelines for building ballot combinations, proofing draft ballots, preparing ballots for printing by the deadline for overseas and military voters and programming and testing of voting machines. Thus, an injunction delaying the candidate qualifying deadline to May 20 would significantly undermine the State's interest "in conducting an efficient election [and] maintaining order" and the public's "[c]onfidence in the integrity of [the] electoral processes." Purcell v. Gonzalez, 549 U.S. at 4.

* * *

"[E]lections are complex to administer, and the public interest would not be served by a chaotic, last-minute reordering of Senate [and House] districts. It is best for candidates and voters to know significantly in advance of the petition period who may run where. Favors v. Cuomo, 881 F.Supp.2d 356, 371 (E.D. N.Y. 2012); see also Alpha Phi Alpha Fraternity Inc. v. Raffensperger, 2022 WL 6333312, at *76 (finding that "with the timeline of candidate qualifying set to begin in days, it would not serve the public interest or the candidates, poll workers, and voters to enjoin use of the Enacted Plans and begin the process of putting new plans in their place for the 2022 election cycle"); Diaz v. Silver, 932 F.Supp. 462, 466–68 (E.D.N.Y.1996) (three-judge court) (in redistricting challenge, holding that, even assuming that plaintiffs had shown likelihood of success on the merits, the public interest weighed against an injunction because there was insufficient time before the election to create a new plan, and cases cited therein).

Accordingly, the merged balancing of the harms and public interest factors weigh against injunctive relief.

(Exhibit E, pp. 38-44.)

**D.      Affidavits from four election officers supported the Governor's, Secretary of State's, and Coordinator of Elections' predictions of electoral chaos and disenfranchisement.**

52.      Governor Lee, Secretary of State Hargett, and Coordinator of Elections Goins

argued that making changes to the election calendar for the August primary in March of an election

15

year would cause irreparable harm to the State and to the public interest based on the sworn affidavits of four election officers. These election officers' affidavits state, in part, as follows:

53. Beth Henry Robertson has held the position of Assistant Coordinator of Elections for the State of Tennessee since 1995. (Exhibit A, Robertson Aff. ¶ 2.)

54. Ms. Robertson signed her *Wygant* affidavit on March 22, 2022. (*Id.* p. 11.)

55. Ms. Robertson devotes the majority of the ten substantive pages of her affidavit to detailing the myriad tasks her office must perform leading up to an August election, including summarizing the statutory deadlines with which the office must comply and summarizing, in detail, the time-consuming tasks that must be completed by the office and by the county election commissions in advance of those deadlines in order to comply with those deadlines.

56. Concerning the transmission of absentee ballots to overseas members of the military and other overseas citizens, Ms. Robertson specifically notes as follows:

> Under the Military and Overseas Voters Empowerment Act ("MOVE"), 42 U.S.C. § 1973ff-1(8), and Tenn. Code Ann. § 2-6-503(2), county election commissions must send ballots to military personnel and overseas citizens no later than forty-five (45) days before the election. With the current statutory deadlines already mentioned [(April 7, 2022)], there are approximately forty-one (41) business days between the time ballots can be prepared and the deadline on which ballots for military personnel and overseas citizens must be mailed out. If the qualifying deadline moves to May 20, the withdrawal deadline moves to May 27 and the political party disqualification process deadline falls on June 3. This postponed schedule gives county election commissions only about 17 days to prepare, review and send ballots to military personnel and overseas citizens.

(*Id.* ¶ 7.)

57. Finally, to summarize the time-based implications of the deadlines and tasks detailed in her affidavit, Ms. Robertson concludes her affidavit by stating as follows:

> As I have previously stated, based upon my experience, we need the time between the qualifying deadline (April 7) and the deadline mandated by the MOVE Act (June 20) in order for our counties to get their ballots prepared and sent out to our military voters. If the April 7 candidate qualifying deadline were moved to May 20 (***or any other date later in the election cycle***), we would not be able to comply with the MOVE Act and

16

it would be very difficult for us to have everything timely and accurately ready for the August election and early voting.

(*Id.* ¶ 21 (emphasis added).)

58. It is particularly noteworthy, given that the Act sets the candidate qualifying deadline to May 15 2026, that Ms. Robertson attests that moving the candidate qualifying deadline to ***any date later than April 7*** would prevent the State from complying with the MOVE Act and would make it "very difficult" to conduct a timely and accurate election.

59. Governor Lee, Secretary of State Hargett, and Coordinator of Elections Goins also relied in the *Wygant* litigation on an affidavit from the Shelby County Administrator of Elections, Linda Phillips. (*See* Exhibit B, Affidavit of Linda Phillips.)

60. Ms. Phillips has held the title of Administrator of Elections for Shelby County, Tennessee since May of 2016. (*Id.* ¶ 2.)

61. Ms. Phillips sets forth in detail the many time-consuming tasks her office must perform leading up to an August election. Ms. Phillips also summarizes the applicable statutory deadlines with which her office must comply and the points at which her office has to wait for another entity or entities to complete a required task before her office can proceed.

62. According to Ms. Phillips, the August primary "is generally the largest and most complicated ballot . . ." (*Id.* ¶ 6); it takes her office one week after ballots have been printed to prepare military and overseas ballots to be mailed (¶ 9.); the office cannot begin preparing ballots until the candidate withdrawal deadline and the removed candidate appeal deadline have passed and until the Shelby County Commission certifies the candidates on the ballot (¶ 10); it takes the office about a week to build the ballots after the Commission certifies the candidates and it then takes the State Coordinator of Elections between two days and a week to review and approve the ballots (¶ 13); the Shelby County Finance Department then has to review three bids for printing

the ballots (which bids can only be acquired after the ballots are completed) and then Shelby County Commission then has to approve the cost of printing the ballots because the cost exceeds $50,000 (and there is a lag of more than a week between when an item can be added to the agenda for the Shelby County Commission meeting and the meeting itself) (¶¶ 14-15).

63.     Ms. Phillips also addresses the difficulty of programming over 1,000 voting machines on a compressed election schedule, and Ms. Phillips details the many other tasks her office is required to perform in the months and weeks leading up to an election. (*Id.* ¶¶ 17-24.)

64.     Finally, concerning the office's ability to comply with the law, concerning voter confusion, and concerning voter disenfranchisement, Ms. Phillips attests as follows:

> So, a delay in the qualifying deadline to May 20, 2022, would result in our Office failing to meet the UOCAVA mailing, potentially disenfranchising overseas and military voters. (¶ 16.)

> There is always some degree of confusion among voters during redistricting years when their polling places change and changing the district maps at this time is likely to cause additional confusion requiring our Office to send additional notices (and incurring additional costs) to affected voters of a change to their polling place. (¶ 26)

> Based on my experience and that of my staff, if the qualifying deadline for the August Primary and General election were delayed to May 20, 2022, our Office would not be able to meet the federally mandated deadline to mail UOCAVA ballots to overseas and military voters by June 20, 2022, potentially disenfranchising those voters. It would also shorten the time for programming and public testing of the early and election day voting machines and increase the costs for additional technicians. Finally, in addition to incurring additional mailing costs, changing the State House and Senate district maps would also jeopardize our Office's ability to complete its obligations timely and accurately, and would likely result in significant voter confusion. (¶ 27)

65.     Governor Lee, Secretary of State Hargett, and Coordinator of Elections Goins also relied in the Wygant litigation on affidavits from the Knox County Administrator of Elections, Chris Davis, and from the Wilson County Administrator of Elections, Tammy Smith. (See Exhibit C, Affidavit of Chris Davis, and Exhibit D, Affidavit of Tammy Smith.)

66.     Mr. Davis and Ms. Smith attest to similar facts and conclude with nearly identical

18

final paragraphs, which make the same conclusions for the administrators' respective counties as Ms. Phillips makes concerning Shelby County in Paragraph 27. (*See* Exhibit C ¶ 26; Exhibit D ¶ 23.)

**E.     The Tennessee Supreme Court stayed a lower court injunction in reliance on these four election officers' affidavits and on the Governor's, Secretary of State's, and Coordinator of Elections' claims.**

67.     In *Wygant*, the trial court enjoined that enacted map of the Tennessee State Senate, provided the General Assembly with 15 days to remedy the maps' constitutional deficiencies, and moved the candidate qualifying deadline to May 5, 2022.

68.     Based on these four affidavits from Tennessee election officers and based on the representations made on behalf of Governor Lee, Secretary of State Hargett, and Coordinator of Elections Goins, the Tennessee Supreme Court stayed the trial court's injunction.

**F.     The Act should be enjoined for the 2026 election cycle to avoid wreaking electoral chaos on the electorate, to avoid voter confusion, and to avoid disenfranchisement.**

69.     The Governor, the Secretary of State, the Coordinator of Elections, the Assistant Coordinator of Elections, three county Administrators of Elections agreed in 2022 that changing the election calendar in May before the August election will violate the voting rights of Shelby County voters.

70.     Moreover, these seven public figures agreed in **March** before an August election that moving the April 7 candidate qualifying deadline later than April 7, including as far out as either May 5 (when the trial court reset the deadline) or to May 20 would wreak electoral chaos, would cause great voter confusion, would prevent election commissions from mailing absentee ballots to members of the military serving overseas in compliance with UOCAVA and the MOVE Act, and would risk disenfranchisement of the voters.

71.     In the wake of congressional redistricting in 2022, the Davidson County Election

19

Commission "misassigned" voters in incorrect congressional districts due to technical errors and issued incorrect ballots to thousands of Davidson County voters.

72. The Davidson County Election Commission began the redistricting process in January of 2022 but did not discover errors until after early voting in the November election was underway.

73. Defendant Mark Goins investigated the Davidson County Election Commission's errors.[11]

74. To avoid infringing the Plaintiffs' right to vote and right to associate the Court should enjoin the implementation and enforcement of the Act until after the 2026 election cycle.

## CAUSES OF ACTION

### COUNT I: Undue Burden on the Fundamental Right to Vote in Violation of the First and Fourteenth Amendments
### (42 U.S.C. §1983; inherent equitable powers)

75. All previous paragraphs are incorporated as though fully set forth herein.

76. The First and Fourteenth Amendments to the United States Constitution guarantees the right to vote to all eligible citizens.

77. "A court considering a challenge to a state election law must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interest put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

78. When constitutional rights are subjected to "severe" restrictions, the regulation

---

[11] Plaintiffs attach as Exhibit J to this Complaint, Report of the Coordinator of Elections (2022).

20

must be "narrowly drawn to advance a state interest of compelling importance." *Id*.

79. The Act's alteration of Tennessee's congressional districts and the August 6, 2026, election calendar and rules will wreak chaos on the electorate, will cause significant voter confusion, will impede the ability of state and local election officials to timely and accurately administer the August 6, 2026 election. This poses a concrete risk of disenfranchising Plaintiffs and severely burdens their right to vote.

80. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek a temporary and permanent injunction to prevent the violation of their constitutional right to vote by enjoining the implementation and enforcement of the Act for the 2026 election cycle.

### COUNT II: Undue Burden on the Fundamental Right to Associate in Violation of the First and Fourteenth Amendments
### (42 U.S.C. §1983; inherent equitable powers)

81. All previous paragraphs are incorporated as though fully set forth herein.

82. "[F]reedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460, 78 (1958).

83. Prior to the Act's enactment, Voter Plaintiffs and Candidate Plaintiffs engaged in associational conduct: political organizing, volunteering, speaking, campaigning, and donating in support of a political candidate and the views which that candidate represents.

84. Voter Plaintiffs and Candidates Plaintiffs created these associational bonds within their Districts, relying on Tennessee's existing Congressional District map and the existing schedules for redrawing Districts and conducting federal Congressional elections under state law.

85. The Act severely burdens Plaintiffs' right to associate by summarily breaking

21

Plaintiffs' already-formed associational bonds for the upcoming election. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)).

86. No compelling reason necessitates such a drastic, unilateral action to upend the map and rules of the August 6, 2026 election cycle.

87. Because of the severe harm of an extreme burden on Plaintiffs' right to associate outweighs the illusory justifications for the Act, the Act unconstitutionally burdens Plaintiffs' right to associate in violation of the First and Fourteenth Amendments.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief on behalf of themselves:

A. Injunctive relief, including a temporary and permanent injunction, prohibiting Defendants from implementing and enforcing of the Act during the 2026 election cycle;

B. Litigation costs, expenses, and Plaintiffs' attorneys' fees to the fullest extent permitted under 42 U.S.C. § 1988 and the Federal Rules of Civil Procedure; and,

C. Such other and further relief as this Court deems just and proper in law and equity.

Dated: May 7, 2026

Respectfully submitted,

/s/ David W. Garrison
**DAVID W. GARRISON (No. 24968)**
**SCOTT P. TIFT (No. 27592)**
**JOSHUA A. FRANK (No. 33294)**
BARRETT JOHNSTON MARTIN & GARRISON, PLLC
200 31st Ave North
Nashville, TN 37203
Telephone: (615) 244-2202
Facsimile: (615) 252-3798
dgarrison@barrettjohnston.com
stift@barrettjohnston.com
jfrank@barrettjohnston.com

**John Spragens (No. 31445)**
Spragens Law PLC
915 Rep. John Lewis Way S., Suite 100

22

Nashville, TN 37203
Telephone: (615) 983-8900
Facsimile: (615) 682-8533
john@spragenslaw.com

*Attorneys for Plaintiffs*