# EXHIBIT 3

## April 22, 2026 Cease-and-Desist Letter to Jan Cooper

**McGuireWoods LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Phone: 804.775.1000
Fax: 804.775.1061
www.mcguirewoods.com

**Heidi E. Siegmund**
Direct: 804.775.1049
hsiegmund@mcguirewoods.com
Fax: 804.698.2315

April 22, 2026

*Via FedEx and E-Mail*

Jan Cooper
Vice President of Sales and Recruiting
Navigate Realty
3301 Knoll Top Lane, Apt. 3050
Franklin, TN 37067
janviercooper94@gmail.com

**Re:  Cease and Desist: Violations of Mark Spain Real Estate Leadership Team Confidentiality Agreement**

Ms. Cooper:

We represent Higher Tech Realty TN, LLC d/b/a Mark Spain Real Estate ("Mark Spain"). This letter is your final notice that your conduct following your departure from Mark Spain on April 14, 2026, constitutes multiple, material breaches of your Leadership Team Confidentiality Agreement and Agreement Not to Compete ("Agreement"). Mark Spain demands that you immediately cease and desist from all such conduct as set forth below.

## Violations of Non-Competition Provision

Under Provision II.1(e-2), you agreed to "not, without the prior written consent of [Mark Spain], … engage in … Leadership Team Member Services which are the same or similar in nature for any Competing Business in the Territory" for a period of three years after your employment with Mark Spain. Under the Agreement, Leadership Team Member Services encompass a wide variety of activities related to real estate sales and client services. A Competing Business is one engaged in "a business substantially the same as" Mark Spain. The relevant Territory includes Tennessee.

Your employment at Navigate violates this provision. According to your LinkedIn, you have become the Vice President of Sales and Recruiting and continue to be based in Tennessee. This role necessarily encompasses tasks and duties

designated as Leadership Team Member Services under the Agreement.[1] Moreover, Navigate Realty is engaged in the real estate business, just like Mark Spain, within the relevant Territory, Tennessee. Because you left Mark Spain on April 14, 2026—a week ago—you are plainly in violation of Provision II.1(e-2).

Even more troubling is that Mark Spain previously notified you of these concerns, both verbally and in a letter dated April 13, 2026, and has received no substantive response. In addition, when asked about your departure, you actively misled Mark Spain as to your eventual employment with Navigate. Your lack of response and misrepresentations suggest to us that you are not taking your contractual promises seriously, and that nothing short of legal action is likely to ensure your cooperation or compliance. As discussed further below, absent immediate notice that you have resigned your position at Navigate and otherwise complied with the demands in this letter, Mark Spain intends to pursue injunctive relief (among other remedies) to secure your compliance.

## Violations of Non-Disclosure of Confidential Information Provision

Under Provisions II.1(a) and II.1(b) of your Agreement, you agreed to not "use, copy, duplicate, transfer, transmit, disclose," or share with third parties trade secrets or confidential information. Trade secrets span a wide array of business and technical information. Confidential information includes any information that "is of a special and unique nature and has tangible or intangible value," "includ[ing] the extraordinary and specialized training provided by [Mark Spain] … and work product of the Company."

We are very concerned to learn that, in the weeks leading up to your resignation from Mark Spain, you accessed, viewed, and downloaded numerous proprietary and confidential Mark Spain documents without a legitimate business purpose. It appears that this was a concerted effort on your part to misappropriate Mark Spain confidential information and trade secrets for Navigate's benefit. In fact, on your last day of work—when you no longer had any legitimate reason to be accessing any Mark Spain information or work product—you accessed and/or downloaded nearly *300 files* containing highly confidential and sensitive Mark Spain data, including:

---

[1] Specifically, Leadership Team Member Services include "(i) managing and organizing real estate agents and staff, (ii) recruiting and selecting new employees, (iii) revenue generation, (iv) limited agent/staff contract terminations, (v) attending meetings, team and staff retention, (vi) sales forecasting, (vii) handling customer/client issues, (viii) taking responsibility for sales retention, (ix) sales forecasting, (x) [b]rand building, (xi) [c]ompany culture building, (xii) handling and solving customer issues and complaints, (xiii) quality control of real estate listings, (xiv) meetings with the [c]ompany's executive team, and (xv) one on one meetings with team members."

- Sales performance trackers, which show Mark Spain sales performance on a weekly and monthly basis;
- Proprietary training materials created to help Mark Spain agents price homes;
- Proprietary training materials concerning client communications and buyer expectations; and
- Mark Spain's agent "how-to" library, which contains instructions for agents on everything from onboarding to closing deals.

As you know, Mark Spain's proprietary agent training processes are a significant part of what provides Mark Spain a competitive advantage. The training materials and sales performance data you misappropriated is exactly what a competitor like Navigate would need to unfairly erode that competitive advantage and undermine Mark Spain in the marketplace. In addition to breaching your Agreement, this conduct constitutes misappropriation of Mark Spain trade secrets under both federal and state law.

## Remedies

In the Agreement, you also acknowledged that Mark Spain "will be irreparably harmed by [your] breach…, and in the event of a breach…, [Mark Spain] will be entitled to all remedies, including equitable, under applicable law and under this Agreement…, including costs and reasonable attorney's fees." Your continued refusal to comply with your contractual promises has caused, and continues to cause, irreparable harm to Mark Spain. Accordingly, Mark Spain intends to pursue immediate injunctive relief if the demands in this letter are not met, as outlined below.

## Conversion

Under Tennessee law, a party sets out a *prima facie* claim for conversion by showing "(1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the true owner's rights." *Coffey v. Coffey*, 578 S.W.3d 10, 24 (Tenn. Ct. App. 2018). As noted above, you have retained emails that include Mark Spain's proprietary training information—material that Mark Spain owns. Because you do not have a right to possess this information following your employment, you have converted that material.

## **Demands**

Mark Spain demands that you:

1. Immediately resign your position with Navigate;

2. Identify all documents in your possession, custody, or control containing Mark Spain confidential information and/or trade secrets, or certify that you have no such information;

3. Agree to give an independent IT professional immediate access to any device on which you access your personal email to determine if any of those devices accessed, used, disclosed, or transferred Mark Spain's confidential information or trade secrets;

4. Identify all third parties (including employees or agents of Navigate) with whom you have shared any such Mark Spain trade secret or confidential information;

5. Preserve all documents, communications, and records related to any solicitation activity, including, but not limited to, emails, text messages, and any other correspondence with current or former employees or agents of Mark Spain; and

6. Refrain from accessing, using, or disclosing all Mark Spain confidential information and trade secrets, and otherwise comply with all obligations in your Agreement.

This letter should further serve as notice of your legal obligation to retain and not alter, modify, or destroy any and all information in your possession, custody, or control, including on computers, servers, or electronic storage devices owned or controlled by you or Navigate that may be relevant to this matter. Please note that your preservation obligations extend to all electronic means of storing data, including iCloud, Sharepoint, Google Drive, and the like. Additionally, you have a duty to preserve any computer or other device that contains, has contained, or has been used to access Mark Spain's information or materials or to which any electronic storage device containing Mark Spain's information or materials has been attached.

Nothing in this letter is intended or should be construed as any type of express or implied waiver or limitation of any of Mark Spain's rights, claims, remedies, or defenses in connection with this matter. On the contrary, Mark Spain reserves the right to seek all legal and equitable remedies for any breaches of your Agreement or violations of applicable law. Those remedies include, but are not limited to, monetary damages (including reasonable attorneys' fees) and preliminary and permanent injunctive relief.

Please confirm receipt of this letter and your intention to comply with the demands above **no later than Monday, April 27, 2026**.

We appreciate your attention to this matter.

Sincerely,

Heidi E. Siegmund

# Exhibit A

# LEADERSHIP TEAM
## CONFIDENTIALITY AGREEMENT AND AGREEMENT NOT TO COMPETE

This Leadership Team Confidentiality Agreement and Agreement Not to Compete ("Agreement") related to and governing the business relationship between Jan Cooper_____ , ("**Employee**"), and **Higher Tech Realty TN, LLC**, its successors and assigns ("**Company**"), entered into this 19th__ day of March_____ , 20 22__ .

## I.    PARTIES; DEFINITIONS

"Affiliates" means:  (A) A person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by or is under common control with another person or entity; (B) Any entity of which a person is an officer, director, or partner or holds an equity interest or ownership position that accounts for (25%) twenty-five percent or more of the voting rights or profit interest of such entity;

"Brand" means the name "Mark Spain Real Estate" as used in the current and future business of Higher Tech Realty, LLC and any other trade names or trademarks used by the Company for business, marketing, and advertising purposes.

"Business" includes retail residential single family real estate sales and brokerage activities, representing institutional and private buyers and/or investors in identifying and negotiating purchases of single family residential real estate on behalf of such institutional and private buyers, joint ventures with title companies, marketing and development of the Company, including but not limited to, the "Mark Spain Real Estate" Brand.

"Competing Business" means any Person, concern or entity which is engaged in or conducts, directly or indirectly, a business substantially the same as the Business.

"Confidential Information" means any confidential or proprietary information including a Trade Secret (as defined herein). "Confidential Information" also means: (i) the confidential and proprietary information of Company, its Affiliates or any direct or indirect subsidiary thereof, nonpublic information the Company designates as being confidential which is of a special and unique nature and has tangible or intangible value and which relates to matters such as, but not limited to, information related to vendors or suppliers of Company or any direct or indirect subsidiary thereof, customers or prospects of Company or any direct or indirect subsidiary thereof, information concerning or related to the business of Company or any direct or indirect subsidiary thereof that could be used as a competitive advantage by competitors if revealed or disclosed to such competitors or to Persons revealing or disclosing same to such competitors, or including Trade Secrets, and (ii) the confidential and proprietary information of any other Person that Company or any direct or indirect subsidiary thereof is obligated to maintain or hold as confidential, together with any and all oral and written analyses, notes, copyright material, compilations, processes for sourcing to investor buyers, studies, interpretations, extracts or summaries which contain, reflect or are based upon, in whole or in part, any of the confidential and proprietary information described in item (i) and (ii) all financial statements, marketing plans, strategies, forecasts, customer and/or supplier lists, research and development activities, computer hardware and software, operating procedures, pricing methods, marketing strategies, investor and institutional buyer strategies and data, all photos, graphics, electronic or other copies or reproductions, in whole or in part, of any of the foregoing, stored in whatever medium (including electronic or magnetic); but is not limited to, Company's data on home sales; data on foreclosure auction purchases

1

Case 3:26-mc-09999    Document 479-3    Filed 05/26/26    Page 8 of 17 PageID #: 23822

and any information related to said purchase; foreclosure data obtained through Company's proprietary data sources; financial data; yield models; names of prospective buyers and/or sellers of residential real estate; information pertaining to transactions in processes; scripts created and used for direct sales, inside sales, or sourcing Leads, buyers or sellers for investors, product schematics or drawings; descriptive and advertising and marketing materials; sales and customer information of Company; Company's business policies or practices; Company's Policy Handbook, information concerning Company's business strategies or potential future business plans with current or prospective vendors, customers, clients, joint venture partners and/or affiliated marketing agreements and/or business partners; information regarding Company's employee/licensee incentive programs, information received from others that Company is obligated to treat as confidential; and other materials and information of a confidential nature; provided however, that Confidential Information shall not include any Excluded Information (as defined below).

Confidential Information also includes the extraordinary and specialized training provided by Company, know-how legal, sales and marketing forms and work product of the Company that, if disclosed, could also increase the ability of third parties to compete with the Company's Business. Confidential information also shall be deemed to specifically include, but is in no way limited to, the following Company proprietary information and the creation, implementation and processes regarding:

1) Builder Referral Program;
2) Listing Agent Manual;
3) Buyer Agent Manual;
4) Listing Coordinator Manual;
5) Administrative Manual;
6) Mark Spain Marketing Plan(s)
7) Inside Sales Lead Follow Up System shall mean the specific system used by the Company to generate Leads (as defined below). This system is derived using only the Company's resources and generates information for potential Leads, potential Customers and Clients which indirectly points towards a sale or purchase of residential real estate, including, but not limited to, all contact information (email addresses, name, mobile and telephone number) of prospective buyers of residential real estate, information regarding the Leads;
8) Leads;
9) Guaranteed Offer Processes and Process Manual.

"Employee" as used herein shall include the Employee, his, her, or its agents and/or representatives in all capacities in which the Employee or his, her, its agents and/or representatives provides any all forms of services provided and necessitated by the Employee/Company relationship contemplated herein. Due to Employee's leadership role with the Company, Employee is considered an Executive employee/Key employee, who will receive specialized training, and is considered a real estate professional. Neither the payment of compensation nor the form of payment thereof are intended to be conditions precedent to the obligations and rights of the parties hereto. The parties agree and acknowledge that adequate consideration has been received by the parties for entering into this Agreement.

"Excluded Information" shall mean any information which the Employee can prove was or became generally known or available to the public (other than by reason of any violation by any Employee, any representative of any Employee or any other Person or other obligation of confidence).

"Material Contact" shall be defined as contact with or intimate knowledge of a customer or potential customer during the Licensee's engagement with the Company.

2

Case 3:26-mc-09999   Document 479-3   Filed 05/26/26   Page 9 of 17 PageID #: 23823

"Lead" or "Leads" means a Person with whom contact is made with the Company deriving through the Company's resources, including but not limited to, the Inside Sales Lead Follow Up System, and related marketing strategies (including Trade Secrets) of the Company which indirectly points toward a sale or purchase of residential real estate by Persons who: (i) desire to sell or buy residential real estate, (ii) potentially desire to sell or buy residential real estate, (iii) seek or inquire about a guaranteed purchase option as offered by the Company. Leads shall also mean information generated by the Inside Sales Lead Follow Up System, including but not limited to, such Person's name, addresses, mobile and telephone numbers, email addresses, any contact information of such Persons, the addresses for residential real estate for sale, purchase, potential sale or potential purchase and any other contact information regarding Persons identified in (i)(ii) and (iii) above.

This information is generated through the Company's own resources, and includes, but is not limited to, such Person's name; address; mobile and telephone numbers; email address; the address of residential real estate for sale, purchase, or a potential sale or purchase; and any other contact information of such Persons.

"Leadership Team Member Services" means services provided by a Leadership Team Member in a management role pertaining to: (i) managing and organizing real estate agents and staff, (ii) recruiting and selecting new employees, (iii) revenue generation, (iv) limited agent/staff contract terminations, (v) attending meetings, team and staff retention, (vi) sales forecasting, (vii) handling customer/client issues, (viii) taking responsibility for sales retention, (ix) sales forecasting, (x) Brand building, (xi) Company culture building, (xii) handling and solving customer issues and complaints, (xiii) quality control of real estate listings, (xiv) meetings with the Company's executive team, and (xv) one on one meetings with team members.

"Leadership Team Member" shall mean a key Employee who engages in promoting and selling a full range services on behalf of the Company, including services related to residential real estate sales, brokerage and other related services and also performs the Leadership Team Member Services on behalf of Company.

"Legitimate Business Interest" includes, but is not limited to, Company and Affiliate Trade Secrets, preserving, protecting and maintaining the secrecy of Confidential and proprietary Information, relationships with existing customers, prospective customers, current and prospective clients, vendors and suppliers, Leads, protection of Leads, protection of its Brand, Brand building and maintenance, goodwill protection, protecting relationships with customers, vendors, joint venture partners and affiliated marketing leads, protecting the Company's processes, the Company Brand, Brand building and maintenance; goodwill associated with the Business, goodwill associated with the Brand; protection of "the face" of the Company, Company media, preservation of loyalty of media following the Company; protecting extraordinary and specialized training provided by Company, and Brand uniqueness of the Company, including avoiding confusion with other brands, special training received by Licensee preventing a Licensee from using business relationship with the Company, or the information that flows through it, for Licensee's own benefit, and other legitimate business interests as otherwise set forth in Paragraph 7.1 herein.

"Person" shall mean any individual, entity, organization, association or group.

"Real Estate Agent" means a licensed professional holding a license in active status with a state approved real estate commissions who represents buyers and sellers in real estate transactions and who is engaged by and works under a licensed real estate broker or affiliated broker.

"Territory" shall mean the state of: Tennessee, the counties of: Robertson, Sumner, Macon, Trousdale, Cheatham, Davidson, Wilson, Smith, Dickson, Williamson, Hickman, Rutherford, Cannon, Franklin Maury, Hamilton, Bledsoe, Rhea, Sequatchie, McMinn, Marion, Bradley, Polk, the cities of: Nashville,

3

Case 3:26-mc-09999    Document 479-3    Filed 05/26/26    Page 10 of 17 PageID #: 23824

Adams, Cross Plains, Westmoreland, Lafayette, Springfield, Graball, Coopertown, Ashland City, Hendersonville, Hartsville, Lebanon, Carthage, Charlotte, White Bluff, Pegram, Burns, Watertown, Lyles, Centerville, Franklin, Smyrna, Watterhill, Auburntown, Columbia, Eagleville, Murfreesboro, Woodbury, Chattanooga, within a twenty (20) mile radius of any principal office of the Company, any county where an office of the Company is located, the counties where Licensee was working or engaged by Company close to the time of Termination (as defined herein).

"Termination" means the cessation of employment of Employee for any reason.

"Trade Secret" means Company information, without regard to form, including, but not limited to, technical or non-technical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers, which is not commonly known or available to the public and which information (1) derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other people who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain it secrecy, or as otherwise defined by Tennessee Uniform Trade Secrets Act § 47-25-1702(4).

The Parties acknowledge and agree that the definitions within this Agreement assist Employee in determining the maximum reasonable scope of excluded activities and applicable geographic region. Company will be irreparably harmed by Employee's breach of this provision, and in the event of a breach of this provision, Company will be entitled to all remedies, including equitable, under applicable law and under this Agreement which is the final agreement between the parties, including costs and reasonable attorney's fees. In addition to the above Legitimate Business Interest, by including this restrictive provision Company seeks to, among other things, deter Employee from creating potential conflicts of interest in light of being deemed a Leadership Team Member and based upon Company's scope of business. Employee acknowledges and agrees that Employee will not be adversely hurt by agreeing to this provision.

## II.   SERVICES, COVENANTS

1.     Protective Covenants. Employee understands and agrees that Company has disclosed and will disclose, to him/her/it, Trade Secrets (defined herein), business and marketing methods and procedures and other Confidential Information (defined herein), without limitation, the names and locations of customers and clients, the terms of customer contracts and specifications and other items which constitute the property of Company and which enable Company to compete successfully in its Business throughout the United States and globally. Company, its successors, assigns and designees, desires to protect Legitimate Business Interest(s).

(a)     Protection of Trade Secrets.  During the term of this Agreement and after its expiration or early termination, irrespective of the reason for such Termination, Employee will not, except as expressly authorized or directed by Company in writing, use, copy, duplicate, transfer, transmit, disclose or permit any unauthorized person access to, any Trade Secrets, belonging to Company, and it Affiliates, any of Company's clients and customers, any of the Company's business partners, joint venture or affiliated marketing partners, vendors or subcontractors, or any related third party for so long as the information or material remains confidential or a Trade Secret, as applicable. Without limiting the foregoing, Employee will abide by Company's policies and regulations, as established from time to time, for the protection of its Trade Secrets and Confidential Information.

Case 3:26-mc-09999     Document 479-3     Filed 05/26/26     Page 11 of 17 PageID #: 23825

(b)     Protection of Confidential Information.  During the term of this Agreement and thereafter, Employee will not, except as expressly authorized or directed by Company in writing, use, copy, duplicate, transfer, transmit, disclose or permit any unauthorized person access to, any Confidential Information, belonging to Company, any of the Company's clients and customers, any of the customer's business partners, vendors, joint venture partners or subcontractors, or any Affiliate, for so long as the information or material remains confidential or a Trade Secret, as applicable.

(c)     Non-Solicitation of Customers.  During the Term of this Agreement and for a period of two (2) years after its expiration or early termination, irrespective of the reason for such termination, Employee will not, without the prior written consent of the Company, directly or indirectly on Employee's own behalf or in the service or on behalf of others, solicit, attempt to divert or appropriate or assist others to solicit, divert or appropriate to a Competing Business (defined herein) within the Territory: (i) any customer or client of Company with whom Employee had Material Contact on behalf of Company at any time during the two (2) year period immediately preceding the expiration or termination of this Agreement, (ii) any prospective customer or client of Company, with whom Employee had Material Contact on behalf of Company at any time during the two (2) year period immediately preceding the expiration or termination of this Agreement, including any customers or clients or potential customers or clients of Company identified by the Inside Sales Lead Follow Up System.

(d)     Non-Solicitation of Contractors/Employees.  During the term of this Agreement and for a period of two (2) years after its expiration or early termination, irrespective of the reason for such termination, Employee will not, without the prior written consent of Company, directly or indirectly on Employee's own behalf or in the service or on behalf of others, solicit, divert, or recruit any employee, contractor or agent or assist others to solicit, divert or recruit any employee, contractor or agent of Company to leave such employment, whether such employment is by written contract or at will.

(e-1)     Non-Competition of Employee During Engagement.  During the term of this Agreement, Employee will not, without the prior written consent of Company, directly or indirectly on Employee's own behalf or in the service or on behalf of others, or in conjunction with any other person, firm, corporation, limited liability company, or any other business entity, or as an employee, agent, representative, partner, consultant, independent contractor, or holder of any interest in any person, firm, corporation, or any other entity or association, engage in, carry-on, or participate in any Competing Business in the Territory.

(e-2)     Non-Competition of Employee upon Termination.  For a period of three (3) years after its expiration or termination of the Term, irrespective of the reason for such termination of the business relationship between Employee and Company, Employee will not, without the prior written consent of Company, directly or indirectly on Employee's own behalf or in the service or on behalf of others, or in conjunction with any other person, firm, corporation, limited liability company, or any other business entity, or as an employee, agent, representative, partner, consultant, independent contractor, or holder of any interest in any person, firm, corporation, or any other entity or association, engage in, carry-on, or participate in Leadership Team Member Services which are the same or similar in nature for any Competing Business in the Territory.  Notwithstanding the foregoing, the covenant at paragraph 1(e-2) shall not extend to activities of a Real Estate Agent (as defined herein), as long as such activities do not constitute a management role as defined by the Leadership Team Member Services section.

2.     Services, Compensation.  The Employee agrees and acknowledges that Employee owes a duty while performing services to act in the best interest of the Company and Employee shall perform all services in accordance with the policies and procedures, as amended from time to time and if engaged as an

5

Case 3:26-mc-09999     Document 479-3     Filed 05/26/26     Page 12 of 17 PageID #: 23826

employee, pursuant to the direction of the management of Company. The Employee's services shall be performed at locations designated by Employer at Employer's direction or as the parties may agree from time to time. The Employee shall serve as a Leadership Team Member for Company. Employee shall perform duties and Leadership Team Services. Employee will be heavily involved with the development of the Business of Company and the Brand building of "Mark Spain Real Estate" and will provide support, sales experience, sales development and marketing for Company. Employee will be actively involved with both existing and prospective customers promoting and selling the combined services offered by Company. Employee shall be compensated for all terms and covenants contained herein and services rendered by Employee according to those terms set forth in the offer provided by the Company and signed by Employee. This Agreement and the signed offer together shall constitute all of the binding terms of this Agreement. Employee shall be paid according to the payroll practices of Company, which may be modified from time to time by Company.

3.      Term. The term of this Agreement shall commence on the beginning date of the business relationship between Employee and Company, and shall expire upon Termination ("Term"). Upon Termination, Employee shall immediately return all property of the Company.

## III.      MISCELLANEOUS

1.      Survival. Notwithstanding the termination of this Agreement or the business relationship between the Employee and Company, the covenants set forth in paragraph II herein, shall survive any such Termination or expiration for the periods set forth in such sections.

2.      Employee Status. Employee acknowledges and agrees that Employee has undertaken a fiduciary duty to the Company as a member of the leadership team for Company.

3.      Assignment by Employee. The Employee agrees for himself, herself, itself and on behalf of his/hers/its executors and administrators, heirs, legatees, distributees and any other persons claiming any benefits under him by virtue of this Agreement, that this Agreement and the rights, interest and benefits hereunder shall not be assigned, transferred, pledged or hypothecated in any way by the Employee or any executor, administrator, heir, legatee, distributee or person claiming under the Employee by virtue of this Agreement and shall not be subject to execution, attachment or similar process. Any attempt at assignment, transfer, pledge or hypothecation or other disposition of this Agreement or of such rights, interest and benefits contrary to the foregoing provision, or the levy of any attachment or similar process thereupon, shall be null and void and without effect.

4.      Enforceability, Severability. If any court determines that any provision of this Agreement, or any part thereof, is invalid or unenforceable, the remainder of this Agreement shall not thereby be affected and shall be given full effect, without regard to the invalid portions. It is further agreed that if at any time it shall be determined that any provisions of paragraph II of this Agreement are unreasonable as to time or area, or both, by any court of competent jurisdiction, the Company shall be entitled to enforce such covenants for such period of time and within such area as may be determined to be reasonable by such court.

5.      Successors of Company. This Agreement shall be binding upon and inure to the benefit of any Successor of Company and any such Successor shall be deemed substituted for Company under the terms of this Agreement. This Agreement may be assigned by Company without the Employee's consent. As used in this Agreement, the term "Successor" shall include any person, firm, Company or other business entity which at any time, whether by merger, purchase or otherwise, acquires all or substantially all of the

6

Case 3:26-mc-09999     Document 479-3     Filed 05/26/26     Page 13 of 17 PageID #: 23827

assets or businesses of Company, but no such substitution shall relieve such companies of their original obligations hereunder.

6.    <u>Notices</u>. All notices or other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given when delivered in person, electronic transmission with read receipt, transmitted by telecopier or mailed by registered or certified first class mail, postage prepaid, return receipt requested to the parties hereto at the address set forth below (as the same may be changed from time to time by notice similarly given) or the last known business or residence address of such other person as may be designated by either party hereto in writing.

**If to Company**:

Attn.: President, John Makarewicz
Higher Tech Realty TN, LLC
901 Woodland Street, Suite 104
Nashville, Tennessee 37206
johnm@markspain.com

**If to Employee:**

Jan Cooper

(address) 3001 Knoll Top Lane Apt 3050

Franklin TN 37067

(email address)

janviercooper94@gmail.com

Cell number

Attn: President, John Makarewicz
Higher Tech Realty, LLC
12600 Deerfield Parkway, Suite 450
Alpharetta, Georgia 30004
johnm@markspain.com

7.    <u>Waiver of Breach</u>. A waiver by Company or the Employee of a breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by the other party. Neither the failure nor any delay by any party in exercising any right, power or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power or privilege.

8.    <u>Entire Agreement; Execution</u>. This instrument contains the entire agreement of the parties. No agreements or representation, oral or otherwise, express or implied, with respect to the subject matter hereof have been made by either party, which are not set forth expressly in this Agreement. It may be changed only by an agreement in writing signed by a party against whom enforcement of any waiver, change, modification, extension or discharge is sought. This Agreement may be signed by electronic signature. Electronic signatures shall be deemed an original and shall represent a complete and true signature for purposes of this Agreement and any offer letter.

9.    <u>Governing Law, Jurisdiction</u>. This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Tennessee. By executing this Agreement, the Employee consents to the personal jurisdiction of all state and federal courts and arbitrations forums located in the State of Tennessee. Each of the parties hereto: (a) consents to submit itself to the personal jurisdiction of any state court located in Davidson County, Tennessee or any federal court which serves the Middle District of Tennessee, Nashville division, in the event any dispute arises out of this Agreement or any of the transactions contemplated by this Agreement, (b) agrees that he or it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from any such court, and (c) agrees that he or it will not bring any action relating to this Agreement or any of the transactions contemplated by this Agreement in any court other than a Federal or state court as set forth in this paragraph 9.

7

Case 3:26-mc-09999    Document 479-3    Filed 05/26/26    Page 14 of 17 PageID #: 23828

10.     Severability. If any provisions of this Agreement shall, for any reason, be held to violate any applicable law, and so much of said Agreement is held to be unenforceable, then the invalidity of such specific provision herein shall not be held to invalidate any other provision herein which shall remain in full force and effect. It is further agreed that if at any time it shall be determined that any provisions of paragraph II of this Agreement are unreasonable as to time or area, or both, by any court of competent jurisdiction, the Company shall be entitled to enforce such covenants for such period of time and within such area as may be determined to be reasonable by such court.

11.     Construction. Both parties have participated in the negotiation and finalization of this Agreement.

12.     Remedies.  The restrictions contained in this Agreement are considered by the parties hereto to be fair and reasonable and necessary for the protection of the legitimate business interests of Company.  It is recognized that damages in the event of a breach of the provisions of this Agreement by Employee would be difficult, if not impossible to ascertain, and it is therefore agreed that Company, in addition to and without limiting another remedy or right it may have, shall have the right to an injunction or other equitable relief in any court of competent jurisdiction enjoining any such breach.  The existence of this right shall not preclude any other rights and remedies at law or in equity which Company may have.  The intent of this Agreement is to provide Company with all remedies afforded to it under this Agreement, and the applicable law, including but not limited to, those remedies under the Tennessee Uniform Trade Secrets Act, § 47-25-1701 et seq.  In an action or suit or proceeding including mediation, brought by any party for enforcement, the prevailing party shall be entitled to recover attorney's fees, costs and necessary disbursements in addition to any other relief to which it may be entitled.  Notwithstanding the foregoing, Licensee shall indemnify and hold Company harmless for all costs, attorney fees and expenses related to the enforcement of the provision of Paragraph II herein.

13.     Dispute Resolution.

        13.1    Mediation.  In the event of any dispute, claim, question or disagreement arising from or relating to this Agreement or the breach hereof (except a request for equitable, injunctive or restraining relief of any kind whatsoever or to enforce an arbitration award) (a "Dispute"), Employee and Company, shall use their best efforts to settle such Dispute. To this effect, Employee and Company, shall consult and negotiate with each other in good faith and attempt to reach a just and equitable solution satisfactory to both parties. If Employee and Company, do not reach such solution within a period of fifteen (15) days after initiation of such consultation and negotiation, such Dispute shall be submitted to non-binding mediation administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to arbitration, litigation or some other dispute resolution process. Such non-binding mediation shall be conducted in Davidson County, Tennessee. Each party, as the case may be, shall bear their own costs and expenses (including attorney's fees); provided however, all costs of the mediators' and administrative fees of mediation shall be borne equally by Employee and Company.

        13.2.   Arbitration. If any Dispute is not resolved within forty-five (45) days after notice of the Dispute from either Employee or Company to the other party in accordance with Section 13.1 hereof, then, upon notice by Company or Employee, to the other party, such Dispute shall be finally settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof. The award rendered by the arbitrators will be final, and the award will not be subject to vacation, modification or appeal, except to the extent permitted by Sections 10 and 11 of the Federal Arbitration Act, the terms of which Sections the parties hereto agree shall apply. Such arbitration shall be conducted in Davidson County, Tennessee. The arbitration shall be conducted by three (3) arbitrator selected in accordance with applicable rules of the American Arbitration Association. The parties agree

Revised2.22TNJan2022EmployeeLeadershipHTR

Case 3:26-mc-09999     Document 479-3     Filed 05/26/26     Page 15 of 17 PageID #: 23829

that the arbitrators shall have no power or authority to make awards or issue orders of as set forth in accordance with the Commercial Arbitration Rules which shall include any award that provides for punitive or exemplary damages or consequential damages. The arbitrators shall award to the prevailing party or parties, if any, as determined by the arbitrators, all costs and fees of such prevailing party or parties. For purposes of the foregoing, "costs and fees" means all reasonable pre-award expenses of the arbitration, including the arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses such as copying and telephone, court costs, witness fees, consultant's fees and attorneys' fees. The award of the arbitrators shall be in writing, signed by the arbitrators and accompanied by a reasoned opinion which includes a breakdown as to specific claims.

13.3. Pendency of Mediation and Arbitration. During the period of any negotiation, non-binding mediation and arbitration in accordance with Section 13.1 and 13.2 hereof, the Employee, shall continue to comply fully with their respective obligations under this Agreement.

*Signatures on next page.*

9

Revised2.22TNJan2022EmployeeLeadershipHTR

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first herein above written.

**EMPLOYEE:**                                    **COMPANY:**

HIGHER TECH REALTY TN, LLC

_Jan Cooper_ _____ (Seal)        By: _____ (Seal)

Jan Cooper _____                      John Makarewicz, President
Print Name

10