DocuSign Envelope ID: A44E2D2D-EEED-4CA6-84DD-40517244E99E

# AXISS Distribution Inc.

## AUTHORIZED DEALER AGREEMENT

THIS AGREEMENT is made as of ___April 28th_____, 20__23__, by and between AXISS DISTRIBUTION INC. DBA AXISS Audio, a corporation, having its principal place of business at 17800 S. Main Street, Suite 109, Gardena CA 90248 (hereinafter called "the Company") and

Suncoast Audio LLC
_____, a
Dealer's Full Legal Name

LLC                                                                    Florida
_____ of the State of _____
(Corporation, Partnership, Sole Proprietorship)
having its principal place of business at

7353 International Place #309        Sarasota        FL        34240
_____
Street Address                      City or Town    State    Zip
(hereinafter called "Dealer")

**WITNESSETH:**

WHEREAS, the Company markets high quality consumer electronics products under various names and designations. The Company desires to market its audio products through a network of authorized dealers who are committed to satisfying the product and service needs of their customers, and to maintaining customer confidence in the Company and its audio products; and

WHEREAS, Dealer has expressed the desire to be appointed as an authorized dealer for the Company's audio products, and has represented to the Company that it has the capacity to satisfy each of its obligations under this Agreement.

NOW THEREFORE, in consideration of the premises and the mutual covenants herein set forth, the Company and Dealer hereby agree as follows:

Article 1.        **Appointment and Acceptance**

1.1        **Appointment.** The Company hereby appoints Dealer as one of its authorized dealers for those products listed from time to time in the Company's authorized U.S.A. Dealer Price List (hereinafter called "the Price List") for audio products (hereinafter called "the Company's Products" or "the Products"). Unless otherwise agreed by the Company in writing, Dealer shall not be authorized to purchase any products from the Company other than those listed in the Price List. The Company shall have the right to add products or to delete products from the Price List at any time, and such additions or deletions shall be deemed to increase or decrease the extent of Dealer's appointment as the case may be.

1.2        **Acceptance.** Dealer hereby accepts the above appointment and agrees to satisfy each of its obligations hereunder at all times during the term of this Agreement.

Article 2.        **Limitations on Locations and Sales for Resale**

Dealer acknowledges that it is desirable that the Products be sold only through those locations which meet the standards established by the Company for its authorized dealers. Dealer further acknowledges that if the Products are offered only through that number of locations deemed by the Company to be adequate to serve the market fully, the Company's authorized dealers will be encouraged to offer the maximum amount of services with respect to the Products, thereby enabling them to compete more effectively against dealers selling products competitive with the Products. Accordingly, Dealer agrees as follows:

2.1        Dealer shall not sell or offer the Products for sale at any locations other than those which the Company has authorized in advance in writing. Dealer's presently authorized location(s) are listed above or on Exhibit "A" which is attached hereto and incorporated as a part of this Agreement. The Company shall have the right to withdraw its authorization of any location at any time, at its sole discretion, by written notice to Dealer.

2.2        Dealer shall not sell or otherwise transfer the Products to any person or entity for purposes of further resale, without the advance written authorization of the Company. The Company shall have the right to withdraw any such authorization at any time, at its sole discretion, by written notice to Dealer.

2.3        Dealer shall not sell or offer the Products for sale on any website other than the Dealer's own website or those which the Company has authorized in advance in writing.

**EXHIBIT 2**

2.4    Dealer is to call Company for authorization for sales into areas not served by other Dealers.

**Article 3.**    **Dealer Requirements**

Dealer agrees that each of the requirements expressed in this Article shall be fulfilled at all times by each of Dealer's authorized locations.

3.1    **Location Facilities.** The location shall be maintained, both interior and exterior, in a manner conducive to the retail sale of the Products.

3.2    **Demonstration Facilities.** The location shall have a distinct area of the store devoted to demonstration of the Products.

3.3    **Personnel and Training.** Dealer shall maintain a staff of competent sales personnel at the location who are knowledgeable concerning electronics products in general, and who are thoroughly familiar with the specifications, features and technical advantages of the Products. Dealer shall conduct any training of its sales personnel which may be necessary to impart such knowledge, and shall cooperate fully in any sales and product training programs offered by the Company.

3.4    **Store Visits.** Dealer shall permit the Company's personnel and independent sales representatives to visit the location at such intervals as the Company, at its sole discretion, deems necessary, so as to enable them to check Dealer's stock of the Products, to engage in any necessary in-store training of Dealer's personnel and to determine whether Dealer is in compliance with its obligations under this Agreement.

3.5    **Purchasing Frequency and Stocking Requirements.** Dealer shall place orders for the Products no less frequently than every ninety (90) days. Dealer shall carry a representative selection of the Products, and shall at all times maintain a stock of the Products sufficient to supply reasonably anticipated consumer demand for a period of not less than forty-five (45) days.

3.6    **Trade Practices.** Dealer shall at no time engage in "bait and switch" practices or any other unfair trade practices with respect to the Products, shall make no physical, electrical or mechanical alterations to the Products without the advance written consent of the Company, shall make no false or misleading representations with regard to the Company or the Products, and shall engage in no activities which may reflect adversely upon the Company or the Products. Dealer shall make no representations to customers or to the trade with respect to the specifications, features or performance of the Products, except such as may be approved in writing or published by the company.

3.7    **Best Efforts.** Dealer shall use its best efforts to promote and sell the Products and shall at all times represent the Products fairly in comparison with competitive products. If a customer inquires about a product which is competitive with any of the Company's Products carried by Dealer, Dealer shall describe and offer to demonstrate the features and benefits of the Company's Products so as to enable the customer to enjoy a full range of choice.

3.8    **Promotional Materials.** Dealer shall utilize any sales literature and other promotional materials supplied free of charge by the Company.

3.9    **Warranty Service.** Dealer shall not perform or attempt to perform warranty service with respect to the Products unless authorized in advance by the Company. If Dealer is not so authorized, it shall comply with procedures prescribed by the Company from time to time concerning disposition of the Products which may be delivered to it for warranty repairs.

3.10    **Compliance With Laws.** To the extent not otherwise required hereunder, Dealer shall comply with all applicable federal, state and local laws and regulations in performing its obligations hereunder and in any of its dealings with the Company or the Products.

3.11    **Complaints.** Dealer shall advise the Company promptly as to any information that may come to its attention concerning charges, complaints or claims about the Company or the Products by customers or others.

**Article 4.**    **Prices and Other Terms and Conditions of Sale**

4.1    **Price List.** Dealer acknowledges receipt of the current Price List. The Price List, any supplementary or replacement Price Lists, and each of the prices and other terms and conditions of sale contained in all such Price Lists shall be considered integral part of this Agreement. The Company shall have the right to reduce or increase prices to Dealer or to change other terms and conditions of sale, at any time, without advance notice. Price reductions shall not result in pricing adjustments with respect to Products ordered prior to the effective date of such reductions. When a new Price List is issued to Dealer by the Company, it shall become a part of this Agreement automatically as of its effective date, and shall supersede all prior inconsistent Price Lists.

4.2 **Taxes.** Prices do not include taxes of any nature. Dealer shall pay such taxes when invoiced by the Company or shall supply tax exemption certificates in a form satisfactory to the Company and appropriate taxing authorities.

4.3 **Administrative Fee.** All sales are subject to a 3.5% administrative fee, determined at the discretion of the Company.

4.4 **Governing Terms.** Unless otherwise agreed by the Company in writing, the terms and conditions stated in this Agreement, in the Price List, on the Company's Invoices and on any order acknowledgment forms utilized by the Company apply to all dealings between the parties hereto. It is expressly agreed that no additional or different terms or conditions contained in Dealer's Purchase Orders or other business forms shall be of any force or effect whatsoever under any circumstances, even if orders submitted by Dealer on such forms are accepted and filled by the Company.

Article 5.        **Credit and Financial Requirements.**

5.1 **Financial Representations.** Dealer represents and warrants to the Company that Dealer is in a good and substantial financial condition and is able to pay all bills when due. Dealer shall, from time to time, furnish any financial statements or additional information as may be requested by the Company in order to enable the Company to determine Dealer's financial condition.

5.2 **Extension of Credit and Credit Limits.** If the Company determines, at its sole discretion, that Dealer does not qualify for credit, the Company may elect to sell the Products to Dealer on a cash-in-advance basis, but shall not be required to do so. If credit is extended, the Company shall have the right to establish credit limits for Dealer and to change such credit limits or any other financial requirements, from time to time, at the Company's sole discretion.

5.3 **Payment Terms.** Sales will be made on the payment terms in effect at the time that an order is accepted, and Dealer shall pay all invoices when due. Dealer shall refrain from making deductions of any kind from any payments due the Company, unless a credit memorandum has been issued by the Company to Dealer. No payment by Dealer to the Company of any lesser amount than that due to the Company shall be deemed to be other than a payment on account, and no endorsement or statement on any check or other medium of payment or in any letter or other writing accompanying any payment shall be deemed an accord and satisfaction. The Company may accept any payment without prejudice to its right to recover any remaining balance or to pursue any other remedy provided in this Agreement or by applicable law.

5.4 **Delinquencies.** If Dealer becomes delinquent in payment obligations or other credit or financial requirements established by the Company, or, if in the sole judgment of the Company, Dealer's credit becomes impaired, the Company shall have any or all of the following rights and remedies in addition to any other rights or remedies provided in this Agreement or by applicable law:

(1)    The Company may refuse to accept any new orders, may cancel or delay shipment of any orders accepted previously, or may stop any shipments in transit.

(2)    If the Company has previously extended credit to Dealer, and the Company elects to make further sales to Dealer, the Company may refuse to extend further credit and may require payment on a cash-in-advance basis.

(3)    The Company may declare all outstanding amounts immediately due and payable, notwithstanding any credit terms previously in effect.

(4)    The Company may send Dealer's account to a collection agency for collection of all or part of amount due. Dealer shall be responsible for all collection agency fees.

5.5 **Attorneys' Fees.** In the event that the Company institutes litigation to collect sums owed by Dealer, Dealer shall be responsible for reasonable attorneys' fees and costs incurred by the Company in connection with the litigation, if a judgment in the Company's favor is entered in the litigation.

Article 6.        **Orders and Shipments.**

6.1 **Acceptance of Orders.** Each of Dealer's orders is subject to the Company's acceptance. In addition to any specific rights of rejection set forth in this Agreement, the Company shall have the right, for any reason whatsoever, to reject any order, in whole or part.

6.2 **Means of Shipment.** The Company shall have the right to select the means of shipment for all orders shipped by the Company to Dealer.

6.3 **Partial Shipments.** The Company shall have the right to make partial shipments with respect to Dealer's orders, which shipments shall be separately invoiced and paid for when due, without regard to subsequent shipments. Delay in shipment or delivery of any particular installment shall not relieve Dealer of its obligation to accept the remaining installments.

6.4 **Risk of Loss.** Regardless of whether Dealer or the Company pays or advances freight or insurance charges, all risk of loss or damage to the Products in transit shall be borne by Dealer, commencing with the placement of the Products in the custody of a carrier or shipping agent at the Company's loading dock. The Company shall, to the extent reasonably possible, assist Dealer in making claims with carriers in the event of such loss or damage.

6.5 **Exclusion of Damages.** The Company shall endeavor to ship the Products within a reasonable time. HOWEVER, THE COMPANY SHALL NOT BE LIABLE TO DEALER FOR ANY DAMAGES, WHETHER INCIDENTAL, CONSEQUENTIAL, OR OTHERWISE, FOR FAILURE TO FILL ORDERS, DELAYS IN SHIPMENT OR DELIVERY OR ANY ERROR IN THE FILLING OF ORDERS.

Article 7.        **Stock Adjustments**

All sales are final. No Products may be returned by Dealer for credit or replacement because of Dealer's desire to adjust its stock of the Products or any other reason.

Article 8.        **Exclusion of Implied Warranties and Damages for Defects**

8.1 **No Implied Warranties.** Any and all implied warranties with respect to Products or parts sold by the Company to Dealer, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, hereby are excluded.

8.2 **Exclusion of Damages.** Unless otherwise provided by applicable law: The Company's liability, if any, to Dealer for any allegedly defective Products or parts shall, under any legal or equitable theory, be limited to repair or replacement of the Product or parts, at the Company's option; AND THE COMPANY SHALL NOT BE LIABLE TO DEALER FOR ANY DAMAGES, WHETHER INCIDENTAL, CONSEQUENTIAL OR OTHERWISE, BECAUSE OF PRODUCTS OR PARTS DEFECTS.

Article 9        **Changes in Products, Parts and Consumer Warranty Policies**

9.1 **Products and Parts.** The Company may at any time change the design of any of its Products or discontinue selling any Product or part without advance notice to Dealer, and Dealer shall have no claim against the Company for failure to furnish parts or Products of the model, design or type previously sold.

9.2 **Warranty and Service.** The Company may at any time change consumer warranty or service policies without incurring any liability to Dealer.

Article 10.        **The Company's Trademarks**

Dealer acknowledges the exclusive ownership by the Company of all trademarks, trade names, trade dress and copyrighted materials utilized by the Company in connection with the Products (hereinafter called collectively "the Company's trademarks"). Any utilization by Dealer of the Company's trademarks in connection with Dealer's sales, advertising or promotion of the Products shall be in accordance with standards and requirements established by the Company form time to time, at the Company's sole discretion. Dealer shall acquire no rights of any kind in any of the Company's trademarks as a result of any such utilization. Dealer shall refrain from utilizing any of the Company's trademarks as any part of the name under which Dealer conducts business, from attaching any additional trademarks or trade designations to the Products, or from affixing any of the Company's trademarks to products other than the Company's Products. Upon any termination of the Agreement, Dealer shall immediately refrain from any further use of the Company's trademarks or any trademarks confusingly similar thereto in connection with any products whatsoever.

Article 11.        **Duration of Agreement and Termination**

11.1 **Duration and Termination.** This Agreement shall remain in effect until terminated by mutual decision of the parties or by either party unilaterally, as hereinafter provided. Either party may terminate this Agreement at any time, and such termination may be either with or without cause. If the termination is without cause, thirty (30) days advance written notice must be provided by the terminating party to the other party. Each party acknowledges that such period is adequate to allow it to take all actions required to adjust its business operations in anticipation of termination. If the termination is for cause, advance written notice may be provided at the option of the terminating party, but shall not be required

11.2 **Definition of Cause.** "Cause" for termination, for purposes of this Agreement, shall include, but shall not necessarily be limited to, the following circumstances:

(1)     Cause shall exist for termination by either party if the other party:

(a)     breaches any provision of this Agreement; or
(b)     makes a material false representation, report or claim in connection with the business relationship of the parties, or engages in fraud or criminal misconduct; or
(c)     attempts to assign this Agreement, except under circumstances permitted under the provisions of this Agreement; or
(d)     becomes insolvent, liquidated or terminates its business, is adjudicated in a

bankruptcy, makes an assignment for the benefit of creditors, suffers the appointment of a receiver or trustee with respect to its business, invokes the provisions of any law for the relief of debtors, or files or has filed against it any similar proceeding.

(2)    In the case of termination by the Company, cause shall also exist if there is any change in the management, ownership, or control of Dealer's business.

11.3    **Final Orders.** Upon any termination of this Agreement, any orders outstanding and unshipped as of the termination date shall be deemed canceled, and the Company shall have no obligation to fill same. If this Agreement is terminated by either party with advance notice, the Company shall have the right to reject all or part of any orders received from Dealer during the period after notice but prior to the effective date of termination (hereinafter called "the final period"), if availability of the Products is insufficient at the time to meet the needs of the Company and its customers fully. In any event, the Company may limit shipments during the final period to Dealer's average monthly purchases from the Company during the six (6) months prior to the month in which notice of termination is provided. Notwithstanding any credit terms made available to Dealer prior to that time, any of the Products shipped by the Company to Dealer during the final period shall be paid for by certified or cashier's check prior to shipment.

11.4    **Acceleration of Due Dates.** Termination of this Agreement by the Company for cause shall automatically accelerate the due date of all invoices for the Products so that they shall become immediately due and payable on the effective date of termination, even if longer terms had been provided previously.

11.5    **Activities Subsequent to Termination.** Upon termination of this Agreement, Dealer shall immediately:

(1)    remove or obliterate any and all signs or other materials which designate Dealer as an authorized dealer for the Products or which include any of Company's trademarks, and cease holding itself out, in any other manner, as an authorized dealer for the Products; and

(2)    notify and instruct publications and others which may list or publish Dealer's name as an authorized dealer (including telephone directories, Yellow Pages and other business directories), to discontinue such listings; and

(3)    return to the Company, if so requested by the Company, any and all literature, point of purchase materials, displays and other promotional materials provided to Dealer by the Company.

11.6    **Exclusion of Damages.** NEITHER PARTY SHALL BE LIABLE TO THE OTHER BECAUSE OF ANY TERMINATION OF THIS AGREEMENT, FOR COMPENSATION, REIMBURSEMENT, LOST PROFITS, OR DAMAGES OF ANY KIND, WHETHER INCIDENTAL, CONSEQUENTIAL OR OTHERWISE.

11.7    **Continuing Obligations.** Notwithstanding the provisions of Paragraph 11.6 hereof, the termination of this Agreement shall not affect Dealer's obligation to satisfy any outstanding indebtedness to the Company, and shall not relieve Dealer of any of its obligations hereunder with respect to any of the Company's Products remaining in Dealer's inventory.

Article 12.    **Repurchase Option**

If requested by the Company, Dealer shall submit to the Company, within ten (10) days following the effective date of any termination of this Agreement, a list of all new and undamaged Products of the Company then in Dealer's inventory. The Company shall have the option to repurchase (but shall not be obligated to repurchase) any or all of such Products, upon providing written notice of its intention to Dealer within thirty (30) days after receipt of the Product list form Dealer. Upon receipt of notice that the Company intends to exercise its repurchase option, Dealer agrees to cause those Products selected by the Company for repurchase to be delivered to such place(s) in the United States as the Company may designate. The Company shall have the right to inspect all returned merchandise before establishing final disposition. Upon inspection, the Company shall be entitled to reject and return to Dealer, freight collect, any Products which, in the Company's sole judgment, are in unacceptable condition. Dealer shall be credited for any accepted products at the net invoice prices at which such Products originally were purchased by Dealer, less any allowances which the Company may have given Dealer on account of such Products, and less the costs of repair, refurbishing or repackaging, as may be necessary.

Article 13.    **Assignment and Notice of Sale**

Dealer has been appointed as an authorized dealer for the Products because of the Company's confidence in Dealer, which confidence is personal in nature. Dealer may not assign, transfer or sell all or any of its rights under this Agreement (or delegate all or any of its obligations hereunder) without the advance written consent of the Company. If a sale or other transfer of the business conducted by Dealer is contemplated (whether by transfer of stock, assets or otherwise), Dealer shall notify the Company in writing not less than thirty (30) days prior to effecting such transfer, but such notice shall not obligate the Company to deal with the transferee. The Company may assign this Agreement only to a parent, subsidiary or affiliated firm or to another entity in connection with the sale or other transfer of all or substantially all of its business assets. Subject to these restrictions, the provisions of

this Agreement shall be binding upon and inure to the benefit of the parties, their successors and their permitted assigns.

Article 14.        **Relationship of the Parties**

The relationship between the Company and Dealer is that of buyer and seller only. Nothing stated in this Agreement shall be construed as creating the relationships of employer and employee, franchiser and franchisee, master and servant, principal and agent, partnership or joint venture between the parties hereto. Dealer shall be deemed as an independent contractor at all times, and neither Dealer nor any of Dealer's employees or agents shall have any express or implied right or authority to assume or create any obligation or liability on behalf of the Company.

Article 15.        **Waiver**

The waiver by either party of any of its rights or any breaches of the other party under this Agreement in a particular instance shall not be construed as a waiver of the same or different rights or breaches in subsequent instances. All remedies, rights undertakings and obligations hereunder shall be cumulative, and none shall operate as a limitation of any other remedy, right, undertaking or obligation hereunder.

Article 16.        **Notices**

All notices and demands of any kind which either the Company or Dealer may be required or desire to serve upon the other under the terms of this Agreement shall be in writing and shall be served by personal delivery or by mail. If by personal delivery, service shall be deemed complete upon such delivery. If by mail, service shall be deemed complete upon mailing. The addresses to which notices and demands shall be delivered or sent may be changed from time to time by notice served by either party on the other as provided herein.

Article 17.        **Governing Law**

This Agreement shall be governed and construed in all respects in accordance with the laws of the State of California.

Article 18.        **Severability**

In the event that any of the provisions of this Agreement or the application of any such provisions to the parties hereto with respect to their obligations hereunder shall be held by a court of competent jurisdiction to be unlawful or unenforceable, the remaining provisions of this Agreement shall remain in full force and effect, and shall not be affected, impaired, or invalidated in any manner.

Article 19.        **Language Interpretations**

The use of a singular or plural form in this Agreement shall include the other form, and the use of a masculine, feminine or neuter gender shall include the other genders.

Article 20.        **Entire Agreement**

This Agreement shall not become effective until executed by Dealer and subsequently executed by the Company. This Agreement, together with any other documents incorporated herein by reference, constitutes the entire Agreement between the parties hereto pertaining in any manner to the subject matter hereof. Except as otherwise provided herein, any and all written or oral agreements heretofore existing between the parties which pertain in any manner to the subject matter of this Agreement are expressly superseded and canceled by this Agreement. Except as otherwise provided in this Agreement, this Agreement may not be modified, supplemented or amended, except by a written instrument executed by both parties. This Agreement has been executed in multiple counterparts, each of which shall be deemed enforceable without production of the others.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date and year first hereinabove written.

DEALER

By:_____
              *Michael Bovaird*
              DocuSigned by:
              D4C4D3A5F4E1403...
                          Signature

Michael Bovaird
_____
                Printed Name

              Owner
Title:_____

AXISS DISTRIBUTION INC.

By:_____

Title:_____

DocuSign Envelope ID: A44E2D2D-EEED-4CA6-84DD-40517244E99E

# AXISS DISTRIBUTION INC.(DBA AXISS Audio)
# RESALE CERTIFICATE

I certify that

Suncoast Audio LLC

NAME OF PURCHASER

7353 International Place #309

ADDRESS

Sarasota                    FL                    34240

CITY                    STATE                    ZIP

Is registered with the below listed state(s) and cities which AXISS Distribution Inc., DBA AXISS Audio, would deliver purchases to and that any such purchases are for wholesale, resale ingredients or components of a new product to be resold, leased, or rented in the normal course of business. We are in the business of wholesaling, retailing, manufacturing, leasing (renting) the following:

| Description of Business: Sell audio equipment | |
|---|---|
| City or State<br>Sarasota, FL | State Sales Tax Registration or ID Number<br>37-1776455 |
| City or State | State Sales Tax Registration or ID Number |

I further certify that if any property so purchased tax-free is used or consumed by the firm as to make it subject to a Sales or Use Tax, we will pay the tax due direct to the proper taxing authority when state law so provides or inform the seller for added tax billing. This certificate shall be made part of each order we may hereafter give to you, unless otherwise specified, and shall be valid until canceled by us in writing or revoked by the city or state.

General description of products to be purchased from the seller:

Under penalties of perjury, I swear or affirm that the information on this form is true and correct as to every material matter.

| SIGNATURE | TITLE | DATE | PHONE NUMBER |
|---|---|---|---|
| DocuSigned by:<br>*Michael Bovaird*<br>D4C4D3A5F4E1403... | Owner | 04/28/2023 | 941-932-0282 |